**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

vs. No. CR 21-0597 JB

SEVERANO CEBALLOS MARTINEZ,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Motion to Reduce Sentencing Pursuant to 18 U.S.C. § 3582(C)(2), filed November 18, 2025 (Doc. 71)("Motion"). The primary issue is whether the Court should reduce Defendant Severano Ceballos Martinez' sentence under 18 U.S.C. § 3582(c)(2), because the United States Sentencing Commission ("Sentencing Commission") lowers Martinez' criminal history score by enacting the newly effective and retroactively applicable criminal history "status point" calculation amendment to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). After reviewing the parties' submissions and the applicable law, the Court concludes that Martinez is not eligible for a reduction in sentence, because he does not receive any criminal history points under U.S.S.G. § 4A1.1(d). Accordingly, the Court denies the Motion.

**FACTUAL BACKGROUND**

On April 23, 2021, the Grand Jury files an indictment in the United States District Court, District of New Mexico, charging Martinez with Count 1: Possession with Intent to Distribute 500 Grams and More of a Mixture and Substance Containing Methamphetamine; and Count 2: Possession with Intent to Distribute 40 Grams and More of Fentanyl (N-phenyl-N-[1-(2-phenylethyl) 4piperidinyl] propenamide). See Presentence Investigation Report ¶ 1, at 3, filed

December 22, 2021 (Doc. 36)("PSR"). On November 3, 2021, Martinez pleads guilty to Count 1 of his two-count indictment. PSR ¶ 2, at 3. The United States Probation Office ("USPO") calculates Martinez criminal history score as 12. See PSR ¶ 37, at 8. Martinez receives: (i) 3 points pursuant to U.S.S.G.§ 4A1.1(a) for his May 23, 1997, felony arrest, see PSR ¶ 33, at 6; (ii) 3 points pursuant to U.S.S.G.§ 4A1.1(a) for his December 21, 2005, felony arrest, see PSR ¶ 34, at 7; (iii) 3 points pursuant to U.S.S.G.§ 4A1.1(a) for his October 2, 2010, felony arrest, see PSR ¶ 35, at 7; and (iv) 3 points pursuant to U.S.S.G.§ 4A1.1(a) for his December 21, 2005, felony arrest, see PSR ¶ 36, at 8. The criminal history of 12 establishes a criminal history category of V. See PSR ¶ 38, at 8. Based on the criminal history category of V and Martinez' total offense level of 33, the guideline imprisonment range is 210 months to 262 months. See PSR ¶ 56, at 10. The Court sentences Martinez to 210 months. See Clerk's Minutes at 1, filed May 12, 2022 (Doc. 46).

## PROCEDURAL BACKGROUND

On November 18, 2025, Martinez files the Motion. See Motion at 1. In the Motion, Martinez moves for "an order reducing . . . [his] term of imprisonment." Motion at 1. Martinez asserts that, if the Court grants the Motion, his "criminal history points would be reduced by 1, reducing his criminal category history also by one." Motion at 2. In support of the Motion, Martinez states that he "plead guilty and received a sentence of 210 months of prison and 5 years of supervised release. He plead guilty to offense charge: 21:841(B)(1)(A) possession with intent to distribute 500g or more of a mixture and substance containing Methamphetamine." Motion at 2. In Martinez' view, that along with the facts that he receives no incident reports and his "FSA recidivism" score is low warrants a reduction in his term of imprisonment. Motion at 2.

On November 25, 2025, Plaintiff United States of America, files the United States' Response to Defendant's Pro Se Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(2) and

Guideline Amendment 821 Filed on November 18, 2025 (Doc. 71), filed November 25, 2025 (Doc. 72)("Response"). In the Response, the United States asserts that Martinez is not eligible "for a reduced sentence," because Martinez "did not receive any status points." Response at 1 (citing PSR ¶¶ 37-38, at 8). Specifically, the United States alleges that Martinez "did not receive any status points because Defendant was not under a criminal justice sentence when he committed the offense for which he was convicted." Response at 2 (citing PSR ¶¶ 37-38, at 8). Moreover, the United States continues, Martinez' "criminal history category of V does not change with the status point amendment and Defendant's guideline range of 210 to 262 months remains the same." Response at 2 (citing PSR ¶¶ 37-38, at 8). Accordingly, the United States concludes, the Court must deny the Motion. See Response at 3.

## LAW REGARDING 18 U.S.C. § 3582(c)(2) SENTENCE REDUCTIONS

"Generally, a district court may not modify a term of imprisonment once it has been imposed." United States v. Williams, 575 F.3d 1075, 1076 (10th Cir. 2009). "A district court is authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so." United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996). Section 3582(c)(2) establishes a narrow exception to this general rule of finality "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). When the United States Sentencing Commission ("Sentencing Commission") revises the Guidelines in a way that reduces the Guidelines range for "a particular offense or category of offenses," the Sentencing Commission must "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced." 28 U.S.C. § 994(u). "In this way the Act requires the Sentencing Commission to decide

whether amendments to the Guidelines should have retroactive effect." Hughes v. United States, 584 U.S. 675, 681 (2018)("Hughes"). If an amendment applies retroactively, § 3582(c)(2) provides that "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

The United States Court of Appeals for the Tenth Circuit explains that a defendant must satisfy three prongs[1] to qualify for a sentence modification under § 3582(c)(2). See United States

---

[1] Despite the clear pronouncement in United States v. C.D., 848 F.3d 1286 (10th Cir. 2017)("C.D."), that "Section 3582(c)(2) plainly tells us a defendant must overcome three distinct hurdles before he may obtain a sentence reduction," 848 F.3d at 1289 (emphasis in original), the Tenth Circuit applies both a three-prong and two-prong analysis in unpublished § 3582(c)(2) decisions following C.D. Compare United States v. Toombs, 712 F. App'x 791, 794 (10th Cir. 2017)("We have recently explained that a defendant must 'overcome three distinct hurdles before he may obtain a sentence reduction [under § 3582(c)(2)].'" (quoting C.D., 848 F.3d at 1289)(alterations in United States v. Toombs)), with United States v. Cota-Medina, No. 21-2063, 2022 WL 971894, at *2 (10th Cir. March 31, 2022)("In determining whether to grant a sentence reduction under § 3582(c)(2), the court engages in 'a two-step process.'"). District courts in the Tenth Circuit, likewise, continue to apply both a three-step and two-step analysis. Compare United States v. Collazo, No. 09-CR-2621, 2020 WL 601943, at *2 (D.N.M. February 6, 2020)(Parker, J.)("The Tenth Circuit has explained that there are three prongs a defendant must meet to qualify for a sentence modification under 3582(c)(2)."), with United States v. Fabian-Hurtado, No. CR 21-0644, 2024 WL 706934, at *2 (D.N.M. February 21, 2024)(Johnson, C.J.)("When considering a retroactive Guidelines amendment, the Court engages in a two-step process.").

A two-pronged inquiry is appealing to a degree, because, under the three-prong analysis, "the second and third prongs overlap" to the extent that U.S.S.G. § 1B1.10 cmt. n.1(B), which courts must consider at the second step of the three-prong analysis, calls upon courts to evaluate the § 3553(a) factors that the court must examine at the third prong. United States v. Collazo, 2020 WL 601943, at *3. As the Tenth Circuit formulates the two-step inquiry, however, the inquiry runs the risk of omitting evaluation of U.S.S.G. § 1B1.10 altogether, see United States v. Battle, 706 F.3d 1313, 1317 (10th Cir. 2013), and § 3582(c)(2) is clear that courts may reduce a defendant's sentence only "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. 3582(c)(2). The Court will apply, therefore, the three-prong analysis, because: (i) the Tenth Circuit's most recent published pronouncement on the matter plainly calls upon the courts to use a three-part test, see C.D., 848 F.3d at 1289; (ii) a three-step inquiry mirrors the similar and settled three-step inquiry courts undertake when evaluating a motion for compassionate release pursuant to § 3582(c)(2)'s sister statute, 18 U.S.C. § 3582(c)(1); and (iii) there is value in ensuring that the U.S.S.G. § 1B1.10 policy statement, and

v. C.D., 848 F.3d 1286, 1289 (10th Cir. 2017)("C.D."). First, "the defendant must show he was sentenced based on a guideline range the Sentencing Commission lowered subsequent to defendant's sentencing." C.D., 848 F.3d at 1289. The first prong is jurisdictional: if the defendant fails to make this initial showing, "the district court lacks jurisdiction over the defendant's motion and the motion must be dismissed." C.D., 848 F.3d at 1289.[2] See United States v. Munoz, 682 F. App'x 635, 636 (10th Cir. 2017)(remanding to the district court, because it "appear[s] that the district court denied the motion on the merits; it should have, instead, dismissed the matter for lack of jurisdiction").[3] Second, a defendant must show that "his request for a sentence reduction is

---

the important limitations to sentence reductions included therein, is given independent consideration.

[2] Recently, the Tenth Circuit calls into question whether the § 3582(c)(2) analysis's first prong is jurisdictional. See United States v. Warren, 22 F.4th 917, 926 n.6 (10th Cir. 2022)(acknowledging that, because 18 U.S.C. § 3582(c)(2) does not contain "an unequivocal statement from Congress" regarding its jurisdictional effect, "our precedent on this issue may need to be revisited," but declining to "seek en banc reconsideration of this question here"). As this Court recognizes, the Tenth Circuit recently concludes that aspects of § 3582(c)(1) are not jurisdictional. See United States v. Hald, 8 F.4th 932, 942 n.7 (10th Cir. 2021)(declining "to read a jurisdictional element in § 3582(c)(1)(A)'s 'extraordinary and compelling reasons' requirement when the statute itself provides no indication . . . to that effect" (quoting 18 U.S.C. § 3582(c)(1)(A))); United States v. Haworth, No. CR 95-0491, 2023 WL 8112827, at *6 (D.N.M. November 22, 2023)(Browning, J.)(citing United States v. Hemmelgarn, 15 F.4th 1027, 1030-31 (10th Cir. 2021)(concluding that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional)). Nonetheless, because the Tenth Circuit does not revisit its holding that the § 3582(c)(2) analysis's first step is jurisdictional, the Court must, as a district court, treat the first step as jurisdictional. See United States v. Hald, 8 F.4th at 942 n.7 ("We acknowledge that this circuit has [held] that § 3582(c)(2)'s requirement that the defendant 'show he was sentenced based on a guideline range the Sentencing Commission lowered subsequent to defendant's sentencing' is a jurisdictional requirement that must be addressed first by the district court." (quoting C.D., 848 F.3d at 1289-90)).

[3] United States v. Munoz is an unpublished opinion, but the Court can rely on a Tenth Circuit unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit states:

consistent with the Sentencing Commission's policy statements." C.D., 848 F.3d at 1289. Section 1B1.10 is the policy statement concerning a sentence reduction resulting from an amended Guidelines. See C.D., 848 F.3d at 1289. The second requirement, unlike the first, is "not a jurisdictional prerequisite to § 3582(c)(2) relief." C.D., 848 F.3d at 1289. "Third, the defendant must convince the district court he is entitled to relief in light of the applicable sentencing factors found in 18 U.S.C. § 3553(a)." C.D., 848 F.3d at 1289-90.

Congress and the Sentencing Commission place three primary restrictions on the relief that § 3582(c)(2) provides. First, courts cannot reduce the term of imprisonment below time served. See U.S.S.G. § 1B1.10 cmt. n.3. Second, courts may not reduce a defendant's sentence below the amended Guidelines range unless the defendant originally receives a below-Guidelines sentence because the United States made a motion to reflect the defendant's substantial assistance to authorities. See U.S.S.G. § 1B1.10 (b)(2)(A)-(B). In the substantial assistance case, a sentence "comparably less than the amended guideline range" may be appropriate. U.S.S.G. § 1B1.10 (b)(2)(B). See Dillon v. United States, 560 U.S. 817, 826-27 (2010)("Only if the sentencing court originally imposed a term of imprisonment below the Guidelines range does § 1B1.10 authorize a court proceeding under § 3582(c)(2) to impose a term 'comparably' below the amended range.").[4]

---

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that United States v. Munoz has persuasive value with respect to a material issue and assists the Court in its disposition of this Memorandum Opinion and Order.

[4] This language from Dillon v. United States, 560 U.S. at 826-27, is more general than the text of § 1B1.10(b)(2)(B). Section 1B1.10(b)(2)(B) only permits courts to reduce the defendant's term of imprisonment to a term that is less than the minimum of the amended guideline range "[i]f

Third, a district court may not grant a sentence reduction if the defendant's original sentence is "based on" a statutory mandatory minimum sentence rather than a Guidelines range. 18 U.S.C. § 3582(c)(2). Mandatory minimums foreclose 18 U.S.C. § 3582(c)(2) sentence reductions even for defendants who escape the mandatory minimum by providing substantial assistance to law enforcement, because their sentences are "'based on their mandatory minimums and their substantial assistance to the Government, not on the sentencing ranges that the Sentencing Commission later lowered." Koons v. United States, 584 U.S. 700, 702 (2018). Consequently, for these defendants, a reduced sentence under 18 U.S.C. § 3582(c)(2) is not available. See Koons v. United States, 584 U.S. at 702.

The Guidelines give specific guidance to courts contemplating sentence reductions.[5] First, courts "shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (d) had been in effect at the time the defendant was sentenced." U.S.S.G. § 1B1.10(b)(1). In making this decision, courts "shall substitute only the amendments listed in subsection (d) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." U.S.S.G. § 1B1.10(b)(1). See Freeman v. United States, 564 U.S. 522, 531 (2011)(Kennedy, J., plurality opinion)("The binding policy statement governing

---

the term of imprisonment imposed was less than the term of imprisonment provided by the guideline range . . . pursuant to a government motion to reflect the defendant's substantial assistance to the authorities." U.S.S.G. § 1B1.10(b)(2)(B).

[5] Sentence reduction hearings under this statute are not full resentencing proceedings. See U.S.S.G. § 1B1.10(a)(3) ("[P]roceedings under 18 U.S.C. § 3582(c)(2) and this policy statement do not constitute a full re-sentencing of the defendant."); Dillon v. United States, 560 U.S. at 83 ("[Section] 3582(c)(2) does not authorize a resentencing. Instead, it permits a sentence reduction within the narrow bounds established by the Commission.").

§ 3582(c)(2) motions places considerable limits on district-court discretion. All Guidelines decisions from the original sentencing remain in place, save the sentencing range that was altered by retroactive amendment."). In other words, "district courts cannot recalculate aspects of a sentence that are unaffected by a retroactively applicable amendment to the Guidelines." United States v. Washington, 759 F.3d 1175, 1182 (10th Cir. 2014). The Supreme Court of the United States interprets "all other guideline application decisions" broadly, holding that courts generally cannot revisit sentencing courts' calculations. U.S.S.G. § 1B1.10(b)(1). In United States v. Dillon, the defendant argues that the sentencing court's decision to treat the Guidelines as mandatory violates his Constitutional rights under United States v. Booker, 543 U.S. 220 (2005). See United States v. Dillon, 560 U.S. at 831. The Supreme Court rejects the defendant's attempt to "recalculate" his sentence and correct the error, explaining that this aspect of his sentence was "outside the scope of the proceeding authorized by § 3582(c)(2)." United States v. Dillon, 560 U.S. at 831.

**1. Amendment 821.**

The Sentencing Commission has a responsibility periodically to "review and revise" its Guidelines. 28 U.S.C. § 994(o). It may choose to reduce the term of imprisonment "recommended in the guidelines applicable to a particular offense or category of offenses," but it must "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced." 28 U.S.C. § 994(u). Congress directs the Sentencing Commission to formulate its Guidelines "to minimize the likelihood that the Federal prison population will exceed the capacity of the Federal prisons, as determined by the Commission." 28 U.S.C. § 994(g).

Before the Sentencing Commission promulgates Amendment 821, U.S.S.G. § 4A1.1(d) adds 2 points to defendants' criminal history scores if they "committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." United States Sentencing Commission, Guidelines Manual, § 4A1.1(d) (Nov. 2021). A defendant's criminal history score determines in which of six criminal history categories the defendant falls. See U.S.S.G. Ch. 5, Pt. A. Generally, "more status points result in a higher criminal history category and a longer range of imprisonment under the guidelines." United States v. Bailey, No. 19-CR-142, 2024 WL 453619, at *2 (E.D. Pa. February 6, 2024)(Kenney, J.).

Amendment 821, which came into effect in November of 2023, see Supp. to App. C at 244, reduces the number of criminal history points a defendant receives for committing the charged offense under a criminal justice sentence. See Supp. to App. C. at 234; United States Sentencing Commission, Guidelines Manual, § 4A1.1(e) (Nov. 2023). Amendment 821 revises how the USPO calculates status points, such that defendants with 7 or more criminal history points now receive 1, instead of 2 status points if they commit their offense while under a criminal justice sentence. See U.S.S.G. § 4A1.1(e); Supp. to App. C at 235. Amendment 821 has retroactive effect, and thus courts may apply it to closed cases. See U.S.S.G. § 1B1.10(a)(1), (d). Amendment 821 also amends § 4A1.1 such that the USPO adds 1 status point only for those defendants committing an offense while under a criminal justice sentence who have over 7 status points. See § 4A1.1(e); United States v. Bailey, 2024 WL 453619, at *2 ("[D]efendants with six or fewer criminal history points now receive zero status points."). Additionally, Amendment 821 moves the language directing courts to apply the status-point increase from § 4A1.1(d) to § 4A1.1(e). See Supp. to App. C at 235. The result of Amendment 821's status-point reduction is that "approximately

11,500 [federal defendants] are eligible to seek a reduction in their current sentence." U.S. Sent'g Comm'n, Materials Relating to the 2023 Criminal History Amendment (last visited July 14, 2026), https://www.ussc.gov/policymaking/materials-relating-2023-criminal-history-amendment.

As justification for Amendment 821, the Sentencing Commission explains that, while "an offender's criminal history calculation under the guidelines is strongly associated with the likelihood of future recidivism by the defendant, . . . status points add little to the overall predictive value associated with the criminal history score." Supp. to App. C at 241 (citing U.S. Sentencing Commission, Revisiting Status Points (2022), https://www.ussc.gov/research/research-reports/revisiting-status-points). According to the Sentencing Commission, "recent research suggests that 'status points' improve the predictive value of the criminal history score less than the original Commission may have expected," and, "[a]ccordingly, the Commission determined that it was appropriate to address several concerns regarding the scope and impact of status points." Supp. to App. C at 241. First, the Sentencing Commission observes that § 4A1.1(e)'s impact upon a defendant likely will already face a separate "consecutive punishment imposed upon revocations of supervised release." Supp. to App. C at 241. Second, the Sentencing Commission observes that "it is also possible that an offender's criminal history score would be independently increased as the result of additional time imposed as the result of a revocation of probation or supervised release for the offense that also results in the addition of status points." Supp. to App. C at 241.[6]

[6] While the Court is unable to do the research to question the Sentencing Commission's decision that status points add little to predict future criminal activity, the Court thinks that there are other reasons that status points may be valuable. Congress evidently thinks that it is important for the federal court to supervise defendants coming out of prison, but supervision of recently incarcerated individuals does not necessarily have to fall under the purview of the judiciary. Federal judicial supervision of defendants is a relatively novel practice, which only began in 1984 with the passage of the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1987 (1984). By contrast, in New Mexico, State probation officers are in the corrections department and not in the State judiciary. See Probation and Parole, New Mexico Corrections Department,

www.cd.nm.gov/divisions/probation-and-parole. The Court does not think the federal courts should be supervising their defendants, as supervising defendants is not a core judicial function. Nevertheless, Congress wants the federal courts to perform this supervision, and the Court is obligated faithfully to carry out this task -- even if it is not its favorite judicial obligation.

Supervised release is a major part of the Court's job. In a border State with twenty-three Indian reservations and because the Court has been on the bench for twenty-two years, the Court has sentenced approximately 3000 defendants; the number of people on supervised release grows with years of service. The District of New Mexico ranks fifth among the ninety-four districts in the number of filed criminal cases. See U.S. District Courts - Criminal Defendants Filed, by Offense and District, Table D-3, United States Courts (2025), https://www.uscourts.gov/data-news/data-tables/2025/12/31/statistical-tables-federal-judiciary/d-3. By way of example, the Court held eighty-four revocation hearings in 2025. Hence, the burden of supervised release on the Court is great and unwelcome.

The Court's view notwithstanding, once Congress has given the Court the task of supervising defendants coming out of prison, it must do the best to perform this responsibility faithfully. While status points may not predict future criminal activity, they send a signal that the federal court takes supervised release seriously. By amending the Guidelines to add Amendment 821, the Sentencing Commission has weakened that signal in two ways. First, the Sentencing Commission has told defendants that it is lowering the points they will receive when they violate supervised release. Second, the Sentencing Commission tells everyone in prison that the lowering is retroactive, broadcasting to everyone in prison that the Sentencing Commission is lowering the points of supervised release.

The Court went to Seattle in 2024 to the United States Sentencing Commission Conference and urged the Sentencing Commission not to make Amendment 821 retroactive. Even if the Sentencing Commission going forward does not want to assign status points, there is no sound reason to make this change retroactive. The Court works very hard to sentence its approximately 130 defendants each year, and then the Sentencing Commission tells the Court it must reevaluate these sentences. Nothing in justice and fairness requires this additional work; there is nothing "wrong" with the first sentence. A Sentencing Commission's ideological desire to decrease the prison population does not alleviate the burden that the process places on the courts and the signal that it sends to defendants that the system does not take supervised release as seriously as it previously did.

Finally, in the Court's view, some of the Sentencing Commission's observations do not reflect reality. For example, the Sentencing Commission observes that defendants implicated by § 4A1.1(a) likely will already face a separate "consecutive punishment imposed upon revocations of supervised release." Supp. to App. C at 241. While the Court cannot say what every judge does, the Court rarely, if ever, makes the sentence for revocation fully consecutive. The Court works hard to come up with a reasonable sentence for the new crime. To start slapping another few months and running it all consecutively sometimes undoes all the work on the new sentence. Typically, the Court gives the defendant a Guideline sentence for the revocation violation, but runs the entire sentence concurrently, except 1 month, which it runs consecutively. This practice does not undo all of the hard work on the new sentence, but gives the defendant a month for violating supervised release. This month sends a signal to the defendant that the Court takes supervision seriously. The Court orally tells the defendant that this one month is specifically for violating supervised release, and the defendant should remember that he or she is serving that last month

## ANALYSIS

The Court denies the Motion. In applying the three-step analysis that C.D. mandates, the Court concludes that Martinez does not satisfies § 3582(c)(1)(A)'s first prong; while the Court bases Martinez' sentence on the Guidelines, pursuant to Hughes, Amendment 821's retroactive application does not result in a lower Guideline imprisonment range than Martinez has at the time of his sentencing, because he receives no status points and is not a zero-point offender, see C.D., 848 F.3d at 1289; Hughes, 584 U.S. at 686-87. Martinez does not meet C.D.'s first prong -- whether the Sentencing Commission subsequently lowered his Guideline range. See C.D., 848 F.3d at 1289. Amendment 821 applies retroactively. See U.S.S.G. § 1B1.10(a)(1), (d); United States v. Claybron, 88 F.4th 1226, 1228 (7th Cir. 2023). Amendment 821's Part A alters U.S.S.G. § 4A1.1, changing the way federal courts calculate criminal history status points for the purposes of establishing the defendant's criminal history category. Section 4A1.1(e) adds "status" points to a defendant's criminal history score if the defendant "committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release[] or escape status." U.S.S.G. § 4A1.1(e). Under Amendment 821's Part A, defendants with 7 or more criminal history status points now receive 1 status point rather than 2 additional

---

because he or she violated supervised release. The Court talks to defendants about the importance of supervised release and that, if he or she violates it, all of the Court's, as well as the parties', hard work to create a fair sentence will go out the window.

As much as the Court disagrees with what the Sentencing Commission is doing with Amendment 821, particularly in its decision to make Amendment 821 retroactive, the Court also believes that elections have consequences. President Trump, who passed the First Step Act, largely to attract African American votes, see Greg Miller, Allegations of Racism Have Marked Trump's Presidency and Become Key Issue as Election Nears, Wash. Post (July 2, 2020)("[F]ormer officials said that Trump only agreed to support the measure when told it might boost his low poll numbers with Black voters."), did not fill the vacancies on the Sentencing Commission to implement his Act. President Biden filled these spots. The Court will not let its own thoughts about policy block its duty to implement the Sentencing Commission's decision on policy. The Court will attempt to apply the new rules as faithfully as it possibly can.

status points, and defendants with less than 7 criminal history status points receive no additional status points if they committed their offense while under a criminal justice sentence. See Supp. to App. C at 235; United States v. Fabian-Hurtado, No. CR 21-644, 2024 WL 706934, at *2 (D.N.M. February 21, 2024)(Johnson, C.J.).

Amendment 821 does not apply, however, to Martinez. First, Martinez does not receive any status points pursuant to § 4A1.1(e), see PSR ¶¶ 37-38, at 8, so Amendment 821 Part A does not apply, see Supp. to App. C at 235, because Martinez is not under a criminal justice sentence when he commits the offense for which the Court sentences him, see PSR ¶¶ 37-38, at 8. Second, Martinez is not a zero-point offender -- his criminal history score is 12, see PSR ¶ 37, at 8 -- so Amendment 821 Part B does not apply, see Supp. to App. C at 236.[7] Accordingly, because Amendment 821 does not change Martinez' Guidelines range, the Court lacks jurisdiction over the Motion and dismisses it. See C.D., 848 F.3d at 1289 (noting that, if the defendant cannot show that he was sentenced based on a Guideline range which the Sentencing Commission subsequently lowers, "the district court lacks jurisdiction over the defendant's motion and the motion must be dismissed").

**IT IS ORDERED** that the Defendant's Motion to Reduce Sentencing Pursuant to 18 U.S.C. § 3582(C)(2), filed November 18, 2025 (Doc. 71), is dismissed.

James O. Browning
UNITED STATES DISTRICT COURT

[7] Amendment 821's Part B decreases certain zero-point offenders' offense level by 2 levels if the defendant meets certain criteria. See Supp. to App. C. at 236.

*Counsel:*

Todd Blanche
Acting United States Attorney General
Ryan Ellison
First Assistant United States Attorney
Samuel A. Hurtado
Assistant United States Attorney
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

James C Loonam
Federal Public Defenders Office
Albuquerque, New Mexico

*Attorneys for the Defendant*